UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK





------------------------------------------------------------X

UNITED STATES OF AMERICA,                    ★     DEC 1 1 2019     ★

v.                              BROOKLYN **MEMORANDUM & ORDER**
                                :          12-CR-198 (WFK)
                                :          17-CV-5235 (WFK)

ION CATALIN VRANCEA,            :

                                :

            Defendant.          :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 15, 2013, a unanimous jury convicted Ion Catalin Vrancea ("Petitioner") of: (1) obstruction of justice; (2) destruction of evidence; (3) use of arson to commit obstruction of justice; (4) use of fire to damage real and personal property; and (5) use of a false passport. *See* Jury Verdict, ECF No. 63.[1] Petitioner now moves to vacate his conviction pursuant to 28 U.S.C. § 2255 on twenty-four grounds. *See* Pet'r's Mot. to Vacate ("Petition") at 5-10, ECF No. 101; Rider in Support of Pet'r's Mot. to Vacate ("Pet'r Mem.") at *2-3, ECF No. 101-1.[2]  The Government opposes Petitioner's motion. *See* Gov't's Mem. of Law in Opp'n to the Pet'r's Mot. ("Gov't Mem."), ECF No. 145.  For the reasons discussed below, Petitioner's motion to vacate his conviction is DENIED in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court comprehensively recounted the background of Petitioner's trial and offense conduct in its memorandum and order setting forth the reasons for Petitioner's sentence on September 29, 2015. *See* Sept. 29, 2015 Mem. & Order ("Sentencing M&O") at 9-16, ECF No. 89.  Given the Court's familiarity with the facts and evidence presented at the January 2013 trial in this action, in the pre- and post-trial briefings, and at the initial sentencing and resentencing, the Court provides only pertinent background information at the onset of this Memorandum and Order.

---

[1] All references to electronic docket filings are references to docket number 12-cr-198.

[2] References to the Rider in Support of Petitioner's Motion to Vacate—which is a package of several documents—indicate page numbers from the entirety of the item docketed at ECF No. 101-1 rather than from the individual documents included therein.

## I.  Offense Conduct

In the fall of 2011, Petitioner became the target of a foreign investigation into a criminal group that stole credit or debit card information from unsuspecting victims and used that information to withdraw funds from the victims' bank accounts, including through ATM machines. Jan. 10, 2013 Tr. at 102-03. The foreign law enforcement authorities undertaking the investigation relayed this information to agents of the Federal Bureau of Investigation ("FBI"), who thereafter began to investigate Petitioner in conjunction with the United States Attorney's Office for the Eastern District of New York. *Id.* at 105-06.

### A. Petitioner's Use of False Passports

On numerous occasions between February 2011 and February 2012, Petitioner used false Romanian passports bearing his actual photograph and false names "Iulian Ichim" or "Raul Caba." *See* Sentencing M&O at 10-11. Petitioner used these false passports at least 35 times to transfer money via Western Union, Moneygram, and Pay-o-Matic. *Id.*; *see also* Gov't Exs. 23-32, 41A, 42C.[3] Surveillance cameras captured images of Petitioner making money transfers using the false passports on four occasions. Gov't Exs. 21, 23, 27, 33A. During his testimony at trial, Petitioner admitted he used false passports to transfer money. Jan. 11, 2013 Tr. at 67.

Petitioner also used these false passports to rent a mailbox at a United Postal Service ("UPS") store located in Queens, New York, and an apartment at 31–76 37th Street in Astoria, New York. Jan. 10, 2013 Tr. at 59, 64, 84, 87; Gov't Exs. 3, 5A. During his testimony at trial, Petitioner admitted he used false passports to rent both the UPS mailbox and the apartment. Jan. 11, 2013 Tr. at 69, 70.

---

[3] All references to exhibits are references to trial exhibits.

### B. Obstruction of Justice, Destruction of Evidence, and Arson

#### 1. February 16, 2012 Execution of Warrant

On February 15, 2012, the Government filed a Sealed Complaint against Petitioner detailing his participation in "an organized criminal group that employs electronic 'skimming' devices to steal credit- and debit-card information from unsuspecting victims in Europe, uses that information to withdraw cash from banks in the United States, and then wires the stolen funds back to co-conspirators overseas." Compl. ¶ 5, ECF No. 1. The same day, Magistrate Judge James Orenstein issued an arrest warrant as to Petitioner. *See* ECF No. 2.

On February 16, 2012, FBI agents arrived at Petitioner's Astoria apartment, situated on the second floor of a five-story building, to arrest him pursuant to the warrant. Jan. 7, 2013 Tr. at 37, 39. At approximately 6:06 A.M., several agents knocked on Petitioner's door, identified themselves as law enforcement authorities, and indicated they had an arrest warrant. *Id.* at 40; Gov't Ex. 1. When no one answered, the agents used a ramming device to attempt to open the door. Jan. 7, 2013 Tr. at 40. Due to an affixed metal latch, the agents could open the door only several inches, yelled they had an arrest warrant, and directed any apartment occupants to open the door. *Id.* at 41. No one from inside the apartment responded. *Id.* at 41-42. Agents then smelled smoke emanating from Petitioner's apartment. *Id.* at 41. By 6:11 A.M., the smoke was visibly apparent in the hallway, triggering the building's smoke alarm. *Id.* at 34; Gov't Ex. 1.

After agents began knocking at Petitioner's front door, Special Agent Matthew Nehas—who was stationed in the rear of Petitioner's apartment—heard "a banging sound" that sounded like "something being smashed against something else, coming from inside the apartment." Jan. 8, 2013 Tr. at 108; Gov't Exs. 221-22. As the ramming device hit Petitioner's front door, Agent Nehas observed Petitioner come to his bedroom window. Jan. 8, 2013 Tr. at 106-10; Gov't Exs.

221-22. Agent Nehas also observed flickering fire light on the back wall of the apartment complex through the living room window. Jan. 8, 2013 Tr. at 109. He then observed a woman's face over the bedroom window sill. *Id.* at 109-10. After the apartment began filling with black smoke, Agent Nehas observed Petitioner open a back window, but when Agent Nehas identified himself as a law enforcement agent, Petitioner retreated back into the apartment. *Id.* at 110; *see also* Sentencing M&O at 12-13.

After Fire Department of the City of New York ("FDNY") firefighters arrived on the scene, they cut through the metal latch on Petitioner's apartment door. Jan. 7, 2013 Tr. at 43-44, 49. By that point, the black smoke had become so thick the agents in the hallway were unable to see into Petitioner's apartment. *Id.* at 44. Indeed, Special Agent Stacy Nimmo testified she could see only a few inches in front of her, and the FDNY gave the agents a heat-sensing camera so they would be able to see. *Id.* The agents entered the apartment on their knees so they could properly breathe and located Petitioner using the heat-sensing camera. *Id.* at 44-45. Ultimately, the agents located and apprehended Petitioner and a woman inside the apartment. *Id.* at 49. At the time, Petitioner had a cut on his hand and was bleeding. *Id.* at 52; Jan. 8, 2013 Tr. at 111.

### 2. The Fire Marshal's Investigation and the FBI's Subsequent Search of Petitioner's Residence

An FDNY fire marshal conducted an examination of Petitioner's bathroom and the items located therein to determine the cause and origin of the fire. Jan. 10, 2013 Tr. at 14-16. The fire marshal determined the fire originated in a cardboard box located in the middle of the bathroom floor and further concluded the fire did not start as the result of an accident. *Id.* at 15, 24-26, 29, 33. For example, the fire marshal uncovered no evidence the fire was caused by common accidental sources, such as an electrical fire in a wall, an electrical device located in the bathroom, a natural gas leak, a candle, or a cigarette. *Id.* at 29.

4

After the Fire Marshal's examination of the bathroom, members of the FBI Evidence Recovery Team ("ERT") conducted a court-authorized search of Petitioner's apartment. Jan. 8. 2-13 Tr. at 164-65; *see also* Sentencing M&O at 13-16. As part of that search, agents recovered various pieces of electronic and plastic equipment, including wiring, pin-hole cameras, memory devices, plastic moldings, card readers, cellular phone components, and batteries, all of which are commonly used to conduct "skimming" activities.[4] *See* Sentencing M&O at 13-16; Presentence Investigation Report ("PSR") ¶¶ 26-28, ECF No. 65.

The agents observed many of these items were purposefully tampered with, hidden, smashed, or burned in an attempt to destroy them. Agents recovered a laptop computer that was hastily ripped apart at the screen and smashed. Gov't Ex. 69; Jan. 8, 2013 Tr. at 122-23; Jan. 9, 2013 Tr. at 402-04. According to the agents, Petitioner's dresser appeared to have been damaged by a blunt object that had been hit against it, and the agents observed blood stains on the front of the dresser. Gov't Exs. 107, 161; Jan. 8, 2013 Tr.at 122. A forensic examination of the laptop revealed the presence of Petitioner's blood. Gov't Ex. 63; Jan. 9, 2013 Tr. at 257. Agents also found a trash can containing both a broken hard drive and a piece of electronic wiring commonly used as a component of a skimming device in the cabinet beneath the kitchen sink, which was also covered with blood. Gov't Exs. 61, 103, 189; Jan. 8, 2019 Tr. at 178. Agents discovered another smashed hard drive inside Petitioner's oven. Gov't Ex. 62; Jan. 8, 2019 Tr. at 178-80. In the living room, agents recovered various additional pieces of electronic components, including spy glasses, card readers and other tools commonly used for skimming or to construct

---

[4] "Skimming" refers to the means by which criminals obtain credit and debit account information from unsuspecting victims who use ATM machines. Jan. 9, 2013 Tr. at 317. Criminals who conduct skimming activity ("Skimmers") typically place on an ATM machine an unauthorized device that records a victim's account information from the magnetic stripe on the back of the victim's credit or debit card. *Id.* Skimmers also place on the ATM another device capable of recording the victim's PIN number. *Id.* Once the Skimmer has obtained this information, the Skimmer can "re-encode" it onto a counterfeit card and access the victim's account, including to withdraw funds. *Id.* at 317-18.

skimming equipment. Gov't Exs. 77, 76A, 130-49; Jan. 8, 2013 Tr. at 211-12, 216-18; Jan. 9, 2013 Tr. at 363.

In the bathroom, where the fire originated, agents recovered the charred remnants of various additional pieces of electronic equipment and plastic molding, including three devices constructed to replicate the card reader of an ATM machine and components designed to read and to store victims' credit card information. Gov't Exs. 70-71, 73; Jan. 8, 2013 Tr. at 191-94; Jan. 9, 2013 Tr. at 346-48. Agents also recovered a cell phone from the bathroom trash can and a green cigarette lighter from the bathtub. Gov't Ex. 68, 74; Jan. 8, 2013 Tr. at 194-95. A forensic examination of the green lighter revealed the presence of male DNA that was insufficient for comparison purposes but was otherwise consistent with Petitioner's DNA such that he could not be excluded as the source. Jan. 9, 2013 Tr. at 261-63.

At trial, Petitioner testified all the skimming equipment recovered from his apartment belonged to him, and at the time the fire started, the female occupant of his apartment was asleep in the bedroom. Jan. 11, 2013 Tr. at 82, 86.

## II.    Conviction and Subsequent Proceedings

On January 15, 2013, a unanimous jury convicted Petitioner of: (1) obstruction of justice; (2) destruction of evidence; (3) use of arson to commit obstruction of justice; (4) use of fire to damage real and personal property; and (5) use of a false passport. *See* Jury Verdict, ECF No. 63.

On November 6, 2013, this Court sentenced Petitioner to 360 months of imprisonment and 3 years of supervised release and ordered Petitioner to pay $67,361.42 in restitution and a mandatory $500.00 special assessment. Nov. 6, 2013 Minute Entry, ECF No. 71. On August 5, 2015, the United States Court of Appeals for the Second Circuit issued a mandate by summary

6

order affirming Petitioner's conviction but remanding the Court's sentencing decision with instructions to vacate Petitioner's sentence and resentence Petitioner. *See* Aug. 5, 2015 Mandate of USCA at 4, ECF No. 85.

On September 29, 2015, the Court re-sentenced Petitioner to 180 months of imprisonment and three years of supervised release and required Petitioner to pay $67,361.42 in restitution and the mandatory $500.00 special assessment. Sept. 29, 2015 Minute Entry, ECF No. 91. The Court of Appeals affirmed this sentence on June 30, 2017. June 30, 2017 Mandate of USCA at 1, ECF No. 100.

### III.    Instant Motion to Vacate Petitioner's Conviction

On September 5, 2017, Petitioner, *pro se*, filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. *See* Petition. On September 14, 2017, the Court ordered the Government to serve and to file a response to Petitioner's motion on or before January 2, 2018, which it did not do. *See* ECF No. 103. On January 31, 2018, the Court denied Petitioner's motion. *See* Jan. 31, 2018 Order. On September 27, 2018, the Court of Appeals vacated the Court's ruling and remanded the case with instructions to the Court to identify the ground or grounds on which the Court denied the motion. *See* Sept. 27, 2018 Mandate of USCA at 1, ECF No. 129. On May 7, 2019, Petitioner filed a petition for a writ of mandamus with the United States Court of Appeals for the Second Circuit seeking to require this Court to rule on his 28 U.S.C. § 2255 motion, which the Second Circuit denied without prejudice to renewal if the Court failed to rule on his 28 U.S.C. § 2255 motion within 90 days of its order dated October 23, 2019. *See* ECF No. 137; ECF No. 143. After repeated failures to comply with this Court's orders directing it to respond to Petitioner's motion, the Government submitted its response papers on November 1, 2019. *See* ECF Nos. 125, 131, 136, 141, 144, 145; Oct. 30, 2018 Order.

## DISCUSSION

Petitioner asks this Court to vacate his conviction and sentence pursuant to 28 U.S.C. §

2255 on twenty-four grounds. Petitioner asserts: (1) seventeen claims of ineffective assistance of

counsel; (2) two claims the Government violated its obligations under *Brady v. Maryland*, 373

U.S. 83 (1963); (3) one claim of prosecutorial misconduct; (4) two claims the Court committed

error in its sentencing analysis; (5) one claim the Government violated his Sixth Amendment

right to counsel by initiating proceedings pursuant to *United States v. Curcio*, 680 F.2d 881 (2d

Cir. 1982); and (6) one claim alleging the indictment provided Petitioner insufficient notice as to

the charges against him. The Court considers each of Petitioner's arguments in turn.

### I.    Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asserts seventeen claims of ineffective assistance of counsel, claiming his trial

and appellate counsel's performance fell below an objective standard of reasonableness, and the

purportedly deficient performance prejudiced him. Each of Petitioner's claims fail.

#### A. Legal Standard

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant standard governing

ineffective assistance of counsel claims. To prevail on an ineffective-assistance-of-counsel claim

under *Strickland*, a petitioner must meet a two-pronged test by establishing (1) "counsel's

performance was deficient" and (2) "the deficient performance prejudiced the defense[.]" *Id.* at

687; *see also Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). "It is the accused's

'heavy burden' to demonstrate a constitutional violation under *Strickland*." *Moreno v. Smith*, 06-

CV-4602, 2010 WL 2975762, at *15 (E.D.N.Y. July 26, 2010) (Matsumoto, J.) (quoting *United

States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential[;] . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, to establish prejudice:

> The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

*Id.* at 694. Indeed, "where there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus." *Gerstein v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005).

### B. Analysis

With respect to each ineffective assistance of counsel claim, Petitioner cannot establish his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Nor can Petitioner establish that but for his counsel's purported errors, "the result of the proceeding would have been different." *Id.* at 694. The Court considers each of Petitioner's arguments in turn.

1. <u>Ground Two: Failure to Investigate and Object to Jury Instructions Regarding the Arson in Count Four</u>

In his second asserted ground for relief, Petitioner argues defense counsel was ineffective in failing: (1) to investigate the cause of the fire that was the subject of the arson charge; and (2) to object to the jury instructions on Count Four, which purportedly allowed him to be convicted by only a preponderance of the evidence.

First, Petitioner argues defense counsel's failure to investigate the cause of the fire was deficient and prejudicial because "had [defense counsel] looked into the cause of the fire, there is a reasonable likelihood that he would have discovered the alternatives to the cause of the fire, and more germane, that the government failed to meaningfully conduct its investigation necessary to conclusively show that Petitioner caused the fire." Pet'r Mem. at *10. Petitioner's argument he suffered prejudice as a result of this decision is unavailing.

Under *Strickland*'s deficiency prong, "counsel has a duty to investigate" and "[c]ounsel's decision not to investigate must be assessed for reasonableness under the circumstances." *Castellano v. United States*, 795 F. Supp. 2d 272, 277 (S.D.N.Y. 2011) (Marrero, J.) (internal citations omitted). To succeed on a claim of ineffective assistance of counsel for failure to investigate, however, a petitioner must provide evidence that would have undermined confidence in the jury verdict. "[The] petitioner has the 'burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Dollison v. Nassau Cty.*, 17-CV-2804, 2019 WL 3531522, at *9 (E.D.N.Y. Aug. 2, 2019) (Bianco, J.) (internal quotation marks and citation omitted). "Vague, conclusory, or speculative claims will not suffice." *Id.* (internal quotation marks and citation omitted).

Here, Petitioner does not identify what evidence would be produced by further investigation into the cause of the fire; rather, Petitioner speculates the Government would have

been unable "to conclusively show that Petitioner caused the fire" and broadly suggests counsel "would have discovered the alternatives to the cause of the fire." Pet'r Mem. at *10. Under the circumstances, and given the evidence proffered, counsel's decision not to investigate further the cause of the fire was reasonable.

In any event, at trial, the jury necessarily refuted Petitioner's claim the fire was the result of mere accident. The evidence presented at trial overwhelmingly supported the fact Petitioner purposefully set fire to his apartment. *See* Sentencing M&O at 9-16. Indeed, the Court found— and the Second Circuit agreed—the record shows Petitioner perjured himself concerning the cause of the fire. *See id.* at 9-10; June 30, 2017 Mandate of USCA at 2. Thus, any failure to investigate did not prejudice Petitioner.

Second, Petitioner argues defense counsel's failure to object to the Court's jury instructions as to Count Four was deficient and prejudicial. But counsel's decision not to object to this portion of the charge was more than reasonable, as the Court's instructions relied significantly on pattern Modern Federal Jury Instructions and were amply supported by the case law cited in the Government's requests to charge on Count Four. *See* ECF No. 49; *see also* Jan. 14, 2013 Tr. at 114-17. Moreover, the Court referenced the "beyond a reasonable doubt" standard in each element of Count Four. *See* Jan. 14, 2013 Tr. at 114-18. The Court's instructions—namely, that the first element of Count Four would be satisfied if the jury found beyond a reasonable doubt "that the defendant, by setting fire to the items located in his apartment, damaged or destroyed or attempted to damage or destroy the building of 31-76 37th Street, Astoria, Queens, New York 11103 by means of fire"—did not lessen that burden. *See id.*[5]

---

[5] As the Government notes, Petitioner's argument on this point also mirrors an argument the Second Circuit addressed in his direct appeal, in which he alleged the Court's instructions on "reasonable doubt" enabled only a "preponderance of the evidence" standard for conviction. *See* Gov't Mem. at 4 n.1. The Second Circuit rejected this challenge, noting it "provide[d] no basis for reversal." *See* Aug. 5, 2015 Mandate of USCA at 3.

For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground two.

### 2. Ground Three: Insufficient Evidence and Failure to Investigate

In his third asserted ground for relief, Petitioner argues defense counsel was ineffective because he failed to subject the Government to a meaningful adversarial testing, principally in that he alleges counsel "failed to advance the non-frivolous defense of factual innocence" and failed to investigate the cause of the fire. Pet'r Mem. at *17. Petitioner's argument is little more than a restatement of both his claim of innocence and the theory he advanced in ground two this Court rejects above. Thus, Petitioner cannot show that counsel acted unreasonably or that he was prejudiced based on this ground, given the evidence of record pointing to his guilt. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground three.

### 3. Ground Four: Ineffective Assistance on Appeal

In his fourth asserted ground for relief, Petitioner argues "counsel provided nominal representation on appeal because . . . he fundamentally failed to winnow out the weaker claims for the stronger ones." Pet'r Mem. at *20. Petitioner's argument is frivolous. As a threshold matter, Petitioner's appellate counsel convinced the Second Circuit to remand the case for resentencing. Due to counsel's successful appeal, on remand, this Court reduced Petitioner's sentence from 360 months' imprisonment to 180 months. Moreover, Petitioner's arguments as to ground four—that the arson-related evidence was insufficient to convict; counsel failed to investigate further the cause of the fire; and counsel failed to stress the Government could not conclusively establish the cause of the fire—again echo the arguments he advanced in connection with grounds two and three. *See* Pet'r Mem. at *19-23. For the same reasons the

Court rejected those claims, the Court rejects Petitioner's ineffective assistance of counsel claims as to ground four.

### 4. Ground Five: Failure to Communicate

In his fifth asserted ground for relief, Petitioner claims he was denied his right to counsel "due to his inability to communicate with counsel due to a language barrier." Pet'r Mem. at *23. According to Petitioner, the inability to communicate compromised his ability to explain his claim of innocence, to wit: "the cause of the fire" and "why it was simply impossible for [Petitioner] to set the fire." *Id.* at 24-25. But the record reflects Petitioner was provided a Romanian interpreter at all relevant stages of his case, and Petitioner was able to communicate with defense counsel in English. Emails between Petitioner and his defense counsel attached to the Petition show Petitioner discussed with counsel potential cooperation, plea negotiations, his reluctance to meet with *Curcio* counsel, and his claim of innocence. *See, e.g.*, Pet'r Mem. at *112-21. Moreover, his arguments for this ground mirror the arguments for grounds two through four; thus, for the same reasons the Court denies claims two through four, the Court denies Petitioner's ineffective assistance of counsel claim as to ground five.

### 5. Ground Six: Ineffective Assistance Based on Petitioner's Decision to Testify at Trial

In his sixth asserted ground for relief, Petitioner argues counsel's performance was deficient and prejudicial due to counsel's "decision to place Petitioner on the stand to testify on his own behalf, [which] exposed him to credibility concerns before the jury," including as to the existence of a foreign conviction, and because counsel "failed to conduct a reasonable pre-trial investigation necessary to adequately advise" Petitioner with respect to his criminal history and also failed to communicate with Petitioner. *Id.* at *26. In light of the facts of this case, Petitioner's argument is misplaced and without merit.

13

With respect to the first prong of *Strickland*, "counsel must inform [a] defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997). Here, the record reflects defense counsel and Petitioner thoughtfully considered and discussed whether Petitioner would testify. The parties argued on the record in Petitioner's presence whether the Court should admit Petitioner's foreign convictions for the purposes of impeachment if Petitioner testified. *See* Jan. 11, 2013 Tr. at 7-17. A Romanian interpreter was present. After the Court granted the Government's motion *in limine* in Petitioner's presence, *see id.*, defense counsel stated on the record, "I just want to explain to [Petitioner] the import of the decision," *id.* at 53. The Court then afforded Petitioner and defense counsel time to confer. *Id.* Thus, as a threshold matter, the record indicates Petitioner made an informed decision to testify, fully aware he would be subject to impeachment. Petitioner has not made any plausible showing counsel pressured him to testify or failed to apprise him of the risks of testifying. Ultimately, counsel ably and strategically fronted the issue of Petitioner's foreign conviction, and Petitioner disclaimed any participation in the crime or having knowledge of the conviction until he was arrested in the instant case.

To the extent Petitioner argues counsel should have conducted a more fulsome investigation of Petitioner's criminal history to provide adequate advice to Petitioner regarding his decision to testify, Petitioner admitted he was aware of the prior conviction at the time of his arrest, and he apparently did not share this information with his attorney at that time. And to the extent Petitioner argues counsel should have secured an interpreter in advising Petitioner regarding his decision to testify, a Romanian interpreter was present at all pertinent proceedings, including during the parties' argument on the Government's motion *in limine*, and therefore at

14

the time Petitioner decided to testify. Indeed, Petitioner does not even aver he would not have testified had his counsel investigated the foreign conviction or had counsel more meaningfully communicated with him through an interpreter. *See* Pet'r Mem. at *25-27. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground six.

### 6. Grounds Seven and Eight: Alleged Failure to Move for a Mistrial and Claimed Structural Error on Appeal

In his seventh and eighth asserted grounds for relief, Petitioner argues his counsel was ineffective for failing to argue both to the Court and on appeal that the Court's failure to reinstruct the jury "after substituting or alternating a juror" was "structural error." *Id.* at *26-28. But the Second Circuit already rejected these claims on Petitioner's direct appeal of his conviction *See* Aug. 5, 2015 Mandate of USCA at 2. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to grounds seven and eight.

### 7. Ground Nine: Failure to Appeal Denial of Rule 29 Motion

In his ninth asserted ground for relief, Petitioner argues his counsel was ineffective for failing to appeal the Court's denial of his Rule 29 motion for a judgment of acquittal. Petitioner's claims fail as to both *Strickland* prongs, particularly given the standard on Rule 29, which requires courts to "view the evidence in the light most favorable to the government and construe all possible inferences in [the Government's] favor." *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991) (internal quotation marks and citation omitted); *see also Baxter v. United States*, 09-CV-368, 2010 WL 4823241, at *2 (D. Conn. Nov. 18, 2010) (Underhill, J.) (holding counsel's failure to move for acquittal after trial pursuant to Rule 29 was "neither objectively unreasonable nor a source of prejudice" because "[g]iven the conclusive strength of the government's evidence, a Rule 29 motion would have been unavailing, and even frivolous"); *Thomas v. United States*, 97-CV-8461, 1998 WL 460197, at *6 (S.D.N.Y. Aug. 5, 1998)

15

(Scheindlin, J.) (holding counsel's decision not to appeal the court's decision denying his Rule 29 motion did not "overcome *Strickland*'s presumption of reasonableness"). For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground nine.

### 8. Ground Twelve: Ineffective Assistance During Plea Negotiations

In his twelfth asserted ground for relief, Petitioner argues his counsel provided ineffective advice during the plea negotiations stage. Petitioner's claim is without merit. With respect to the first prong of *Strickland*, counsel has a "general duty to advise a defendant concerning acceptance of a plea bargain." *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). Although this duty does not necessarily require counsel to "render advice as to acceptance of a plea bargain . . . [,] counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." *Id.* Moreover, because "the ultimate decision whether to plead guilty must be made by the defendant . . . [,] a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (internal citation omitted). Here, the record is clear counsel informed Petitioner of the Government's plea offer, as evidenced by the emails attached to the Petition. And Petitioner makes no claim counsel pressured him to proceed to trial. *See, e.g.,* Pet'r Mem. at *112-21. Rather, the emails demonstrate Petitioner insisted on going to trial. *See infra.* In communicating to him the contents of the plea and advising him in connection with that plea, counsel fulfilled his obligations to Petitioner.

With respect to the second prong of *Strickland*, "defendants must demonstrate a reasonable probability they would have accepted [a] plea offer" but for their deficient representation. *Missouri v. Frye*, 566 U.S. 134, 147, 150 (2012). "In making this prediction, courts have been skeptical of accepting a defendant's self-serving, post-conviction statements

that he would have pleaded guilty if properly advised of the consequences by his attorney." *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000) (Parker, J.). Courts have similarly declined to find prejudice where the record reflects a defendant "was adamant he wanted to go to trial and expressed no interest in taking a plea" and "was unable or unwilling to accept that he was guilty." *Meszaros v. United States*, 201 F. Supp. 3d 251, 277 (E.D.N.Y. 2016) (Bianco, J.). Here, Petitioner's email to counsel, attached to the Petition, makes clear Petitioner would not have accepted any plea offer that included the arson charge. *See* Pet'r Mem. at *116. In that email, Petitioner noted, "i m never going to sign something that I never did and i m not guilty for" and "if we r not going to agree regarding a real plea offer then we should pursuit with the trial." *Id.* Given these emails and Petitioner's continued exhortations of actual innocence pre-trial, during trial, on appeal, and in the present motion, he cannot show prejudice in connection with counsel's performance at the plea negotiations stage. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground twelve.

### 9. Ground Eighteen: Failure to Appeal Error at Resentencing

In his eighteenth asserted ground for relief, Petitioner argues his appellate counsel was ineffective because "he did not review the trial court record and decided to forgo the clear-cut winner for claims that had little chance of winning." Pet'r Mem. at *42. In particular, Petitioner claims counsel should have argued on appeal the Court incorrectly calculated the sentencing Guidelines range. *Id.*

The Court cannot conclude counsel's performance fell below an objective standard of reasonableness under *Strickland*'s first prong. This is not a case in which counsel "failed to make a 'sure winner' argument." *Eze v. Senkowski*, 321 F.3d 110, 137 (2d Cir. 2003) (quoting

*Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998)). Instead, "counsel's alleged mistake was that he failed to proffer a relatively weak argument," which is "not outside the wide range of professional competent assistance" permitted under *Strickland*. *Carmichael v. Chappius*, 640 F. Supp.3d 340, 351 (S.D.N.Y. Sept. 13, 2018) (Failla, J.). In light of the Court's extensive thirty-five-page memorandum and order clearly applying the Guidelines and explaining the Court's reasoning for the sentence, Petitioner's claim that defense counsel's failure to challenge this Court's reasoning on appeal was insufficient is unavailing. Indeed, the Second Circuit, in affirming this Court's resentencing, noted the Court's opinion was "thorough and well reasoned." June 30, 2017 Mandate of USCA at 2. Petitioner therefore fails to establish his counsel's performance fell below an objective standard of reasonableness for his failure to raise the argument in question. Nor can Petitioner establish prejudice. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claim as to ground eighteen.

### 10. Ground Twenty-Two: Errors Involving Mental Health Determination, Mandatory Minimums, Due Process Violations, and Sentencing

In his twenty-second asserted ground for relief, Petitioner argues in a catch-all manner, defense counsel was ineffective at various stages of representation because he failed: (1) to investigate Petitioner's purported incompetent mental state, as delineated in ground ten; (2) to challenge the mandatory minimum sentences, as delineated in ground eleven; (3) to raise a due process argument based on the alleged inability of the Government to prove every element of the conviction under 18 U.S.C. § 844(h)(1) beyond a reasonable doubt, as delineated in ground thirteen; and (4) to provide mitigating evidence to the Court at sentencing or challenge the Court's Guidelines calculations as delineated in ground sixteen. *See* Pet'r Mem. at *47-48. Petitioners claims on these grounds fail.

*i.    Ground Ten: Petitioner's Competence to Stand Trial*

With respect to ground ten, Petitioner claims the Government should have required a mental health evaluation to determine Petitioner's competency to stand trial. Petitioner further argues defense counsel was ineffective for his failure to investigate Petitioner's purported incompetent mental state.

As a general matter, either the Government or a criminal defendant may request a mental health examination or hearing in advance of trial for a determination of the defendant's mental competency to stand trial. The Court must grant such a request "if there is reasonable cause to believe that the defendant may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. "The touchstone of an inquiry into a claim of mental incompetence is 'an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings,' and 'failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence.'" *Perez v. United States*, 14-CV-3995, 2017 WL 1628902, at *4 (S.D.N.Y. May 1, 2017) (Broderick, J.) (quoting *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986)). Ultimately, "it is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *Vamos*, 797 F.2d at 1150.

Under the second prong of *Strickland*, Petitioner "must show that there is a reasonable probability that [he] would have been found incompetent to stand trial if counsel had pursued the issue" to establish prejudice on this ground. *Id.* Prior to the instant motion, Petitioner has never claimed he was unable to perceive the proceedings at trial or participate in his defense as a result of mental illness. *See Gluzman*, 124 F. Supp. 2d at 175. Moreover, the Petition is devoid of any

objective or substantial indication that around the time of Petitioner's criminal activity and the trial, Petitioner "had been hospitalized for any mental illness . . . [,] was receiving professional mental health counseling for any illness, or . . . was even under any medication." *Id.* The Presentence Investigation Report indicates Petitioner neither requested nor received any mental or emotional health treatment while incarcerated prior to trial. *See* PSR ¶¶ 80-81. Although the Report shows Petitioner received mental health treatment in Romania in 2001, when he was diagnosed with depression and anxiety, he ceased ingesting medications for these conditions when he left Romania in or about 2010. *Id.* ¶¶ 75, 80-81.

When Petitioner testified at trial, the Court observed Petitioner's demeanor and ability to answer questions posed to him by defense counsel and the Government. Based on the Court's observations at that time and throughout the pre-trial proceedings, and the information recounted above, "there was no reasonable probability that the trial court would have found that [Petitioner] lacked either the ability to consult meaningfully with [his] lawyer or a rational and factual understanding of the proceedings against him." *Perez*, 2017 WL 1628902, at *4. Thus, regardless of whether Petitioner can establish his counsel's performance fell below an objective standard of reasonableness, he cannot establish prejudice on this ground.

### ii.  *Ground Eleven: Mandatory Minimum Sentences*

With respect to ground eleven, Petitioner claims the mandatory consecutive sentence of five years imposed on Count Four was improper based on the notion the Government did not prove the elements of 18 U.S.C. § 844(i) beyond a reasonable doubt, as purportedly required under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). This claim necessarily fails as the record supports the jury verdict on Count Four, as the Court has already found. The validity of the conviction on Count Four is underscored by the Second Circuit's opinion on Petitioner's

resentencing, in which the Circuit rejected Petitioner's double jeopardy argument claiming the convictions on Counts Three and Four were factually the same. June 30, 2017 Mandate of USCA at 2. As the jury properly considered the evidence and found the defendant guilty beyond a reasonable doubt on all counts, the mandatory sentence imposed on Count Four was appropriate. Defense counsel's purported failure to object to a mandatory sentence, therefore, was certainly reasonable, and Petitioner cannot show prejudice as a result of counsel's decision. Petitioner's claim as to ground eleven therefore fails.

### iii. Ground Thirteen: Due Process

With respect to ground thirteen, Petitioner simply restates his sufficiency of the evidence claims raised in grounds two and three, to wit: he claims his due process rights were violated because the evidence was insufficient to support the jury's verdict. As stated above, defense counsel's alleged failure to challenge the sufficiency of the evidence cannot, in light of the overwhelming evidence of guilt, warrant relief from this Court.

### iv. Ground Sixteen: Procedural Error at Resentencing

With respect to ground sixteen, Petitioner restates his argument the Court committed procedural error with respect to the Guidelines analysis. Again, this argument is without merit.

Thus, the Court denies Petitioner's ineffective assistance of counsel claims as to ground twenty-two, as well as for grounds ten, eleven, thirteen, and sixteen.

### 11. Ground Twenty-Three: Failure to Move to Suppress Evidence

In his twenty-third asserted ground for relief, Petitioner argues the evidence used to convict him was "tainted," the product of a "staged crime scene," and "falsified," and defense counsel's failure to move to suppress the evidence recovered from the scene was unreasonable and prejudicial. *See* Pet'r Mem. at *48-49. Specifically, Petitioner argues counsel should have

moved to suppress evidence from the "staged crime scene" after receiving discovery materials that showed "different item location[s], such as where the lighter appears in the pictures; or where the fan cover appear[s]." *Id.* at *48.

With respect to the first prong of *Strickland*, courts in this circuit "are understandably reluctant to require defense counsel routinely to file boilerplate motions [to suppress] merely to vindicate their professional competence without regard for the grounds supporting such motions." *See United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987). Rather, the decision whether or not to file a suppression motion is generally a strategic decision courts will not disturb. *See, e.g.*, *United States v. Jacobs*, 270 F. Supp. 2d 293, 298 (D. Conn. 2003) (Underhill, J.) (describing decision not to proceed with a suppression motion as a "sound tactical decision"). Here, Petitioner makes no attempt to show how the crime scene was "staged" or how the evidence was "tainted." Rather, Petitioner's claims are both conclusory and self-serving. Petitioner thus cannot show his counsel's failure to move to suppress fell below an objective standard of reasonableness. *See id.* (holding counsel's failure to move to suppress post-arrest statements was not ineffective assistance of counsel because "[a]part from the [petitioner's] bald assertion that a suppression motion in this case would have 'apparent viability,' no basis for supporting th[e] motion" was given).

With respect to the second prong of *Strickland*, a defendant must "'show, at a minimum, that he could have prevailed on a properly pursued suppression motion.'" *United States v. Pierce*, 17-CR-32, 2019 WL 468124, at *2 (W.D.N.Y. Feb. 6, 2019) (Vilardo, J.) (internal alterations omitted) (quoting *McLary v. Conway*, 492 F. App'x 157, 159 (2d Cir. 2012) (summary order)). In light of the record before it, the Court cannot say a motion to suppress would have been successful. *See Walker v. Bennett*, 262 F. Supp. 2d 25, 40 (W.D.N.Y. 2003)

(Larimer, J.). Petitioner therefore fails to demonstrate prejudice under *Strickland.* For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground twenty-three.

### 12. Ground Twenty-Four: Failure to Request Daubert Hearing or Consult with Arson Expert

In his twenty-fourth asserted ground for relief, Petitioner argues defense counsel's failure to request a *Daubert* hearing, consult with an arson expert, or call a defense expert at trial was deficient and prejudicial. *See* Pet'r Mem. at 47-49. "[I]t is well settled that the decision to call witnesses on behalf of a defendant 'is a tactical decision of the sort engaged in by defense attorneys in almost every trial' and thus cannot form the basis of an ineffective assistance of counsel claim." *Adams v. Keyser,* 16-CV-129, 2018 WL 2089337, at *7 (S.D.N.Y. May 3, 2018) (Daniels, J.). This is especially so where "counsel opted for a strategy that did not involve the use of an expert." *Id.* As the Supreme Court has noted, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter,* 562 U.S. 86, 111 (2011). Here, the decision to call an expert or to move for a *Daubert* hearing was committed to defense counsel's discretion, and his failure to do so was not objectively unreasonable.

Petitioner's reliance on *United States v. Hebshie,* 754 F. Supp. 2d 89 (D. Mass. 2010) is inapposite. In *Hebshie,* a district court overturned an arson conviction where the evidence essential to an arson determination was of highly questionable reliability. Without such evidence in that case, the cause-and-origin testimony would have necessarily failed. Here, however, the expert testimony regarding the cause-and-origin of the arson was not predicated on questionable science or technical evidence and was corroborated by lay testimony concerning Petitioner's motives and movements. Unlike Petitioner, the defendant in *Hebshie* was not inside the building

at the time of the fire and the evidence of "motive to burn down his store was less than overwhelming." 754 F. Supp. 2d at 92. Thus, defense counsel's decision not to call an expert or move for a *Daubert* hearing was not unreasonable.

Moreover, defense counsel's decision not to retain a defense expert or move for a *Daubert* hearing did not prejudice Petitioner. *See, e.g.*, *Schlesinger v. United States*, 898 F. Supp. 2d 489 (E.D.N.Y. 2012) (Spatt, J.) (finding defense counsel's failure to retain an expert or move for a *Daubert* hearing to counter arson-related evidence did not prejudice Petitioner where there was ample evidence showing the fire was intentionally set and the defendant had motive and opportunity to set the blaze). The circumstantial evidence of Petitioner's guilt in setting the fire in the bathroom was overwhelming, as was his motive and opportunity to do so. Absent a showing of prejudice, Petitioner's claim fails. For these reasons, the Court denies Petitioner's ineffective assistance of counsel claims as to ground twenty-three.

## II.    Petitioner's *Brady* Claims

In his first and twentieth asserted grounds for relief, Petitioner claims the Government violated his due process by failing to abide by obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, federal prosecutors have an "affirmative duty" to disclose evidence favorable to a defendant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). To establish a *Brady* violation, a defendant must show the Government failed to disclose favorable evidence, the evidence is material and exculpatory or impeaching, and prejudice ensues. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (internal quotation marks and citation omitted).

Here, with respect to ground one, Petitioner claims the Government should have known a thermostat in the bathroom where the fire started was "commonly understood to cause fires," and since "no maintenance [was] done on the thermostat since the building was erected," there was "a likelihood that defects in the thermostat could have triggered the fire." Pet'r Mem. at *4-9. Petitioner points to no evidence indicating the Government failed to disclose evidence of defects in the thermostat and no evidence showing any of the alleged defects in the thermostat. The only pertinent testimony at trial reveals the thermostat had to be replaced because it had melted, not because it was defective. Jan. 1, 2013 Tr. at 98-99. Petitioner's claims are unsubstantiated and speculative. Moreover, Petitioner's claim the thermostat could have caused the fire is entirely inconsistent with the evidence adduced at trial, which overwhelmingly showed Petitioner caused the fire through his attempts at destroying the evidence of his crimes. Petitioner accordingly cannot demonstrate prejudice, and his *Brady* claims under ground one fail.

With respect to ground twenty, Petitioner claims the Government failed to disclose his girlfriend's statement she *could* have left candles burning in the bathroom or electronics plugged in. As with ground one, Petitioner's *Brady* claims under ground twenty are entirely unsubstantiated and speculative. Even if the Government should have known about this speculative evidence, it would not have been material or exculpatory because the overwhelming evidence in the case indicated the fire was not caused accidentally by a candle or a plugged-in electronic device. *Id.* at 29. Defense counsel expressly raised the issue of candles to the fire marshal on cross-examination, *see id.* at 35, which the jury rejected. For these reasons, the Court denies Petitioner's claims under *Brady*.

## III. Petitioner's Prosecutorial Misconduct Claim

In his fourteenth asserted ground for relief, Petitioner claims the Government wrongfully charged him, the Government attempted to compel him to plead guilty to a crime he did not commit, the "case against [him] was not strong, and as a matter of justice the United States should not have brought the case to trial." Pet'r Mem. at *35-36. As recounted in detail above, the evidence presented at trial refutes these claims. The Government properly charged this case and brought it to trial. The jury deliberated and returned its verdict, confirming justice was served. For these reasons, the Court denies Petitioner's claims of prosecutorial misconduct.

## IV. Petitioner's Claims of Errors by the Court at Sentencing

In his fifteenth asserted ground for relief, Petitioner claims the Court committed procedural error by failing to consider imposing a sentence below the mandatory minimums based on *Dean v. United States*, 137 S. Ct. 1170 (2017). Pet'r Mem. at *36-37. In this case, the Second Circuit has already affirmed Petitioner's current sentence. June 30, 2017 Mandate of USCA. Petitioner's attempts to circumvent the Court's and Circuit's prior rulings are improper. In any event, *Dean* is inapposite to the case at bar. In *Dean*, the Supreme Court held 18 U.S.C. § 924(c)—the statute setting mandatory minimum sentences for using or possessing a firearm in connection with a violent or drug trafficking crime—does not restrict a sentencing court's authority to consider imposing a sentence below the mandatory minimum statute when calculating a just sentence for the predicate count. 137 S. Ct. at 1176-77. Here, however, the Court sentenced Petitioner according to the mandatory minimum sentences required for convictions of Counts Three and Four, and there was no predicate crime that could have altered the Court's calculus.

In his seventeenth asserted ground for relief, Petitioner claims the Court violated his due process by imposing restitution despite the purported insufficiency of the evidence to support his conviction. Pet'r Mem. at *41. This claim fails, as, again, the evidence of Petitioner's guilt was overwhelming. Moreover, the Court properly considered the issue of restitution as part of Petitioner's sentence, which the Second Circuit affirmed. *See* June 30, 2017 Mandate of USCA. For these reasons, the Court rejects Petitioner's claims as to grounds fifteen and seventeen.

## V.    Petitioner's Sixth Amendment *Curcio* Claims

In his nineteenth asserted ground for relief, Petitioner claims the Government violated his Sixth Amendment right to counsel by initiating *Curcio* proceedings and encouraging Petitioner to consult independent *Curcio* counsel for the purpose of exploring and waiving potential conflicts in defense counsel's representation of Petitioner. Pet'r Mem. at *43-44. "When a district court is sufficiently apprised of even the possibility of a conflict of interest . . . it has a threshold obligation to investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (internal quotation marks, alterations, and citations omitted). Where there exists "a waivable actual or potential conflict, the district court must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Id.* As part of ensuring a defendant's waiver is made knowingly and intentionally, the district court must specifically "give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel." *Id.* (internal quotation marks and citation omitted).

Here, the Government made clear it sought the hearing to explore any potential conflict Petitioner may have had with defense counsel and to have Petitioner make a knowing choice with respect to continuing to proceed with the counsel of his choice. *See* ECF No. 36. On December 28, 2012, Petitioner, with the assistance of *Curcio* counsel, knowingly waived any potential conflict raised, and the Court allowed Petitioner to retain his chosen counsel. *See* Dec. 28, 2012 Electronic Minute Entry. In encouraging Petitioner to consult independent *Curcio* counsel in determining whether to waive potential conflicts with his chosen counsel, the Court did not violate Petitioner's Sixth Amendment right to counsel. Indeed, Petitioner chose to retain his counsel of choice with full understanding of the issues raised at the *Curcio* hearing, and the Court relieved *Curcio* counsel. *Id.* For these Petitioner's claim the appointment of *Curcio* counsel violated the Sixth Amendment fails.

## VI. Petitioner's Claim of the Insufficiency of the Indictment

Last, in his twenty-first ground for relief, Petitioner asserts the indictment was insufficient on its face to apprise Petitioner of the crimes with which he was charged. Petitioner also complains he did not have notice of the penalties he faced.

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Generally, an indictment tracking the language of the statute is sufficient to meet these notice requirements. *United States v.*

*Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008); *see also United States v. Middendorf*, 18-CR-36, 2018 WL 3443117, at *3 (S.D.N.Y. July 17, 2018) (Oetken, J.).

Here, a reading of each count of the second superseding indictment shows the Government satisfied its burden under Rule 7(c)(1). The charges clearly indicate the essential elements of the crimes charged and are specific enough to have enabled Petitioner to prepare his defense and plead double jeopardy. Moreover, the charged statutes clearly reference the penalties imposed upon conviction, and as evidenced by the emails between Petitioner and his counsel attached to the Petition, Petitioner was fully aware of the mandatory minimum sentence he faced in the event of conviction. For these reasons, Petitioner's claim the indictment was insufficient fails.

## VII. Evidentiary Hearing

Petitioner requests an evidentiary hearing in connection with his claims. A district court need not conduct an evidentiary hearing where the record is sufficient to deny the petition. As the Second Circuit has stated:

> It is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits[,] and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required. Our precedent disapproves of summary dismissal of petitions where factual issues exists, but it permits a middle road of deciding disputed facts on the basis of written submissions.

*Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (internal quotation marks and citations omitted).

The Court, having presided over Petitioner's trial and having carefully reviewed the full trial record, concludes an evidentiary hearing is unnecessary. Petitioner's motion and the record of this case conclusively demonstrate Petitioner is not entitled to *habeas* relief. *See, e.g., Chang*

*v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (finding it was within the district court's discretion not to hold a full testimonial hearing where the district court found a hearing "would add little or nothing to the written submissions"); *Brown v. United States*, 03-CV-3909, 03-CV-4371, 2010 WL 2594640, at *12 (E.D.N.Y. June 23, 2010) (Dearie, J.) (finding no hearing required based on the Court's "[h]aving presided over petitioner's . . . trial[] and based on the submissions[.]").

## CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate his conviction pursuant to 28 U.S.C. § 2255 is DENIED in its entirety. A certificate of appealability shall not issue, as Petitioner has not "'made a substantial showing of the denial of a constitutional right.'" *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005) (quoting 28 U.S.C. § 2253(c)). The Clerk of Court is directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: December 10, 2019
      Brooklyn, New York